### CURETON v. THE STATE.

1. The act approved August 6th, 1907 (Acts 1907, p. 81), commonly known as the prohibition law, is not violative of article 1, section 1, paragraph 3, of the constitution of this State, which provides that no person shall be deprived' of life, liberty, or property, except by due process of law, on the ground that it prohibits the manufacture of alcohol for any and every purpose, including its use for medicinal, scientific, and mechanical purposes and its use in the arts, as well as other uses than as a beverage.

(a) Nor does the act offend this constitutional provision because of its applicability to a person who owned and operated a distillery at the time of its passage.

2. Nor is such act violative of the fourteenth amendment of the constitution of the United States, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

3. The act mentioned above does not violate article 1, section 1, paragraph 2, of the constitution of this State, which declares that protection of

person and property is the paramount duty of government, and shall be impartial and complete.

FEBRUARY 14, 1911.

Constitutional questions; from Court of Appeals.　2752.

The Court of Appeals certified to the Supreme Court the following questions: "Is the act approved August 6, 1907 (Acts 1907, p. 81), commonly known as the prohibition law, unconstitutional and invalid in that it absolutely and totally prohibits the manufacture of alcohol for any and every purpose, including its use for medicinal, scientific, and mechanical purposes and its use in the arts, as well as other uses than as a beverage, for any of the following reasons: because to enforce it. (and especially as relates to the plaintiff in error who owns and operates a distillery for the purpose of manufacturing alcoholic and spirituous liquors) would be to deprive him of his property, in violation of that provision of the constitution of this State (article 1, section 1, paragraph 3, Civil Code, § 5700) which provides that no person shall be deprived of life, liberty, or property, except by due process of law; or because it violates, for the same reason, the first section of the 14th amendment to the constitution of the United States (Civil Code, § 6030), which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws; or because it violates article 1, section 1, paragraph 2, of the constitution of the State of Georgia, which provides that protection of person and property is the paramount duty of government, and shall be impartial and complete?"

*Spears & Lynch, Maddox, McCamy & Shumate, W. W. Cureton, W. U. Jacoway, J. P. Jacoway,* and *G. D. Lancaster,* for plaintiff in error.　*T. C. Milner, solicitor-general,* and *G. W. Stevens,* contra.

LUMPKIN, J.　If anything can be established by repeated adjudication, it is that the regulation or prohibition of the sale of spirituous and intoxicating liquors is a matter which falls peculiarly within the police power of the State. In *Henderson* v. *Heyward,* 109 *Ga.* 373, 376 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384), Mr. Justice Cobb said: "That the State has a right to prohibit absolutely the sale of whisky is no longer an open question, either in this court or in the Supreme Court of the United States." See *Whitley* v. *State,* 134 *Ga.* 758, 773, 774 (68 S. E. 716), and

citations. Alcohol is judicially recognized in this State as a spirituous and intoxicating liquor. *Snider* v. *State*, 81 *Ga.* 753 (7 S. E. 631, 12 Am. St. R. 350); *Loid* v. *State*, 104 *Ga.* 726 (30 S. E. 949). Indeed, alcohol is the intoxicating element of liquors generally. Were it not for the effects of alcohol, there would probably be no laws prohibiting the manufacture or sale of liquors. Under the police power, not only the sale but the manufacture of spirituous and intoxicating liquors may be prohibited. The wisdom and expediency of so doing is a question for the legislature, not for the courts. In Foster v. Kansas, 112 U. S. 201 (5 Sup. Ct. 97, 28 L. ed. 696), it was held that "A State law prohibiting the manufacture and sale of intoxicating liquors is not repugnant to the Constitution of the United States." In Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. 273, 31 L. ed. 205), a statute of Kansas which prohibited in that State both the manufacture and sale of spirituous, malt, vinous, fermented, or other intoxicating liquors, to be used as a beverage, was held not to violate the fourteenth amendment of the constitution of the United States. See also 2 Story on Constitutional Law (5th ed.), § 1954; Black on Intoxicating Liquors, § 37; Woollen & Thornton on Intoxicating Liquors, § 93, and citations.

It was argued that because, under the act of 1907, the sale of alcohol for certain specified purposes and under certain restrictions was not unlawful, therefore to prohibit the manufacture of that which may have a lawful use or sale was violative of the section of the State constitution which provides that no person shall be deprived of life, liberty, or property, except by due process of law, and likewise of the fourteenth amendment of the constitution of the United States. In other words, that, because there may be some lawful use of a thing, the legislature can not prohibit its manufacture. A somewhat similar argument was advanced in the Mugler case, supra, where it was contended that "no convention or legislature has the right, under our form of government, to prohibit any citizen from manufacturing for his own use, or for export, or storage, any article of food or drink not endangering or affecting the rights or others." But Mr. Justice Harlan said (p. 662) : "If, therefore, a State deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors for other than medicinal, scientific, and manufacturing purposes, to be

necessary to the peace and security of society, the courts can not, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. . . . And so, if, in the judgment of the legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their view as to what is best and safest for the community, to disregard the legislative determination of that question. So far from such a regulation having no relation to the general end sought to be accomplished, the entire scheme of prohibition, as embodied in the constitution and laws of Kansas, might fail, if the right of each citizen to manufacture intoxicating liquors for his own use as a beverage were recognized. Such a right does not inhere in citizenship." In Kidd v. Pearson, 128 U. S. 1 (9 Sup. Ct. 6, 32 L. ed 346), a statute of Iowa was under consideration. The Supreme Court of that State construed the statute to mean: ' (1) that foreign intoxicating liquors might be imported into the State, and there kept for sale by the importer in the original packages (or for transportation in such packages and sale beyond the limits of the State); (2) that intoxicating liquors might be manufactured and sold within the State for mechanical, medicinal, culinary, and sacramental purposes, but for no other— not even for the purpose of transportation beyond the limits of the State. It held that the statute thus construed raised no conflict with the constitution of the United States, and was therefore valid. Accepting this construction, the Supreme Court of the United States declared that "The right of a State to enact a statute prohibiting the manufacture of intoxicating liquors within its limits is not affected by the fact that the manufacturer of such spirits intends to export them when manufactured." Here was a way in which the liquors could have been used without violating the law prohibiting the sale within the State. But the possibility of such a use did not destroy the right of the State to prohibit the manufacture. In so far as the decision in that case dealt with the difference between manufacture and commerce; and with the interstate-commerce clause of the constitution of the United States, it is not applicable to the case now before us; but in so far as it dealt with the police power of the State over the manufacture of

intoxicating liquors, it is in point.  Mr. Justice Lamar said (p. 23) :
"We have seen that whether a State, in the exercise of its undis-
puted power of local administration, can enact a statute prohibiting
within its limits the manufacture of intoxicating liquors, except
for certain purposes, is not any longer an open question before this
court."  The State, in the exercise of its police power, has the right
to prohibit or restrict the manufacture of intoxicating liquors
within its limits.  In the case last cited such manufacture was per-
mitted only for particular purposes; but whether it should be per-
mitted for those purposes or not was a matter for legislative dis-
cretion.

In this State the legislature has seen fit to prohibit altogether
the manufacture or sale of alcoholic, spirituous, malt, or intoxicating
liquors.  Alcohol may be sold for certain purposes and under cer-
tain restrictions only.  It was doubtless felt that to permit distill-
leries to be operated over the State, under a claim that the pro-
prietors desired to make alcohol for lawful uses, rather than whisky
or alcohol for other uses, would render the prohibition law of little
effect, and that the total prohibition of such manufacture was a
necessary and proper means to render efficient the general pro-
hibition law, and to guard against the evils of intemperance.  The
courts can not declare that the legislature was without this power,
or that it was such an arbitrary exercise of power as to violate the
provisions of the constitutions referred to in the questions pro-
pounded by the Court of Appeals.

The contention that the plaintiff in error had invested money in a
distillery before the passage of the general prohibition law, and un-
less he could continue to use it for distilling, the value of his prop-
erty would be seriously impaired, and that the law is therefore un-
constitutional, is not a new one.  It has been held a number of
times, that, where a State lawfully exercises its police power by
prohibiting the manufacture or sale of intoxicating liquors, the
mere fact that incidentally property will be of less value, if it can
not be used in the prohibited business, will not affect the validity of
the law.  Under the local-option legislation, which was in existence
before the general State prohibition law was passed, prohibition
became effective in a certain county by virtue of an election.  An
attack was made on the law.  In *Menken* v. *City of Atlanta,* 78 *Ga.*
668 (2 S. E. 559), it was said: "The local option legislation of this

State being constitutional as a valid exercise of the police power, it follows that the incidental effects upon the value of property, such as a brewery and its fixtures, resulting from the inability of the owners to adjust their old business to the new law, is *damnum absque injuria*. The law does not take or damage their property for the use of the public, but only prevents them from taking or damaging the public for their use." It is not a privilege or immunity of a citizen of the United States, guaranteed by the Federal constitution, to manufacture or sell intoxicating liquors within the borders of a State, in spite of the will of such State expressed through its legislature; nor does such a local prohibition law conflict with the fourteenth amendment of that constitution.

Such a law is not violative of article 1, section 1, paragraph 2, of the constitution of the State, which declares that protection of person and property is the paramount duty of government, and shall be impartial and complete. The citizen and the use of his property are subject to the legitimate exercise of the police power of the State to prevent injury to the public. *Atlantic Coast Line R. Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725, 731). It is no objection to the validity of the law under consideration, enacted under the police power of the State by the chosen representatives of the people, that it cuts off the plaintiff in error from doing what he wants to do, and from doing what might be profitable for him to do. His individual desire for gain must yield to the valid police law for the public welfare and safety. If the contention referred to were upheld, it would seem to apply also to laws against gambling-houses, places where bets are made on races, what are called "bucket-shops," and almost any other prohibited business, if money were invested in preparing for it before the law was enacted.

From what has been said it follows that the prohibition law of 1907 is not invalid for any of the reasons involved in the questions propounded by the Court of Appeals. Since these questions were certified to this court, the Code of 1910 has been issued from the press. But the references to sections as numbered in the Code of 1895 are retained, so as to conform to the citations in the questions.

                                        *All the Justices concur.*